J-S13024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF K.K., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.F., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1735 MDA 2019 |

Appeal from the Decree Entered September 30, 2019
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s):  060-ADOPT-2019

BEFORE:   STABILE, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 21, 2020**

R.F. ("Father") appeals from the September 30, 2019 Decree involuntarily terminating his parental rights to his daughter, K.K. ("Child"), born in December 2009, pursuant to 23 Pa.C.S. § 2511(a) and (b). Additionally, Father's counsel, Joseph L. Hitchings, Esquire, seeks to withdraw his representation of Father pursuant to ***Anders v. California***, 386 U.S. 738 (1967), ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009), and ***In re V.E.***, 611 A.2d 1267, (Pa. Super. 1992).  After careful review, we grant counsel's Application for Leave to Withdraw as Counsel, and affirm the orphans' court's Decree.[1]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The court also involuntarily terminated the parental rights of Child's mother, S.K. ("Mother").  Mother did not appeal the termination of her parental rights.

**Summary of Facts and Procedural History**

We glean the following relevant procedural and factual history from our review of the certified record and the orphans' court's Pa.R.A.P. 1925(a) Opinion. Orphan's Ct. Op, dated Dec. 20, 2019. The Child and her Mother were living with the Child's maternal grandparents ("Grandparents") in September 2017. On or about September 17, 2017, Mother left the home without taking the Child and without informing the Child or Grandparents if or when she would return. When Mother left, the Child only had enough seizure medicine to last a few days and she did not provide releases for Grandparents to obtain refills from the Child's doctor when the medication ran out.

Prior to her departure, Mother had not been taking the Child to school on a regular basis. Father, who has never met the Child, was incarcerated in September 2017, as he had been for most of the Child's life.[2] Thus, following Mother's disappearance, Cumberland County Children and Youth Services ("CYS") became involved, and the court adjudicated the Child dependent on October 21, 2017. The Child remained with Grandparents in kinship foster care.

_____

[2] There was a period of more than a year during the Child's life when Father was not in jail. Significantly, he never made a serious attempt to be part of her life, nor did he ever pursue visitation. Most importantly, he never provided any parental care essential to the child's well-being. The child was not even aware that he was alive until her therapist informed her that he recently attempted to contact her by letter.

On September 9, 2019, CYS filed a Petition to involuntarily terminate Father's and Mother's parental rights. The court appointed both a Guardian *Ad Litem* and legal counsel for Child. On September 27, 2019, the court conducted an evidentiary hearing on the Petition. At the hearing, CYS presented the testimony of its caseworker, Gan Fry; Tiffany Merril, Child's therapist; and P.W., Child's maternal grandmother. Mother and Father testified on their own behalf.

On September 30, 2019, the court entered a Decree involuntarily terminating Father's parental rights to Child. Father timely filed a Notice of Appeal and Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), contending the orphans' court erred in involuntarily terminating his parental rights pursuant to 23 Pa.C.S. § 2511(a) and (b). The orphan's court responded with its Rule 1925(a) Opinion.

**Counsel's Application to Withdraw**

On January 24, 2020, Father's counsel filed an Application for Leave to Withdraw as Counsel and an **Anders** brief. When presented with an **Anders** brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). Prior to withdrawing as counsel under **Anders**, counsel must file a brief that meets the requirements established by the Pennsylvania Supreme Court in

***Santiago***, ***supra.***[3]  In addition, counsel must provide a copy of the ***Anders*** brief to the client with a letter stating that he or she may retain new counsel, proceed *pro se*, or raise any additional issues not raised by counsel in the ***Anders*** brief.  ***Commonwealth v. Orellana***, 86 A.3d 877, 879-80 (Pa. Super. 2014). Counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

Here, Father's counsel has complied with the requirements of ***Anders/Santiago***.  We thus proceed to the merits of the issues raised in the ***Anders*** brief.

**Legal Analysis**

In reviewing cases in which the orphans' court involuntarily terminated parental rights, appellate courts must accept the findings of fact and credibility determinations of the orphans' court if the record supports them.  ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).  If the record supports the factual findings, appellate courts then determine if the orphans' court made an error of law or abused its discretion.  ***Id.***  Where the competent record evidence

---

[3] ***Santiago*** requires an attorney to: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous.  Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.  ***Santiago***, 978 A.2d at 361.

- 4 -

supports the court's findings, we must affirm the orphans' court even though the record could support an opposite result. ***In re Adoption of Atencio***, 650 A.2d 1064, 1066 (Pa. 1994).

"The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***In re M.G.***, 855 A.2d 68, 73–74 (Pa. Super. 2004) (citations omitted). Appellate courts defer to the orphans' court that often has "first-hand observations of the parties spanning multiple hearings." ***In re T.S.M***., ***supra*** at 267 (citations and quotation marks omitted). Importantly, "[t]he court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time . . . in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care." ***In re Adoption of R.J.S.,*** 901 A.2d 502, 513 (Pa. Super. 2006) (emphasis in original; citations omitted).

In addressing petitions to terminate parental rights involuntarily, the Adoption Act requires courts to conduct a bifurcated analysis. ***See*** 23 Pa.C.S. § 2511(a) and (b). Courts first focus on the conduct of the parent, and if the party seeking termination presents clear and convincing evidence that the parent's conduct meets one of the grounds for termination set forth in Section 2511(a), then the court will analyze whether termination of parental rights will meet the needs and welfare of the child, *i.e.*, the best interests of the

child, as provided in Section 2511(b). Courts particularly focus on the existence of the child's bond with the parent, if any, and the potential effect on the child of severing such bond. *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). A parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his parental duties, to the child's right to have proper parenting and fulfillment of the child's potential in a permanent, healthy, safe environment. *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

While the orphans' court here found that CYS met its burden of proof under 23 Pa.C.S. § 2511(a)(1), (2), and (b), we need only agree with its decision as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm the termination of parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

**Termination Pursuant to Section 2511(a)(2)**

We first conclude that the orphans' court properly exercised its discretion by terminating Father's parental rights pursuant to Section 2511(a)(2). Section 2511(a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2); *In re Adoption of S.P.*,

47 A.3d 817, 827 (Pa. 2012) (citations omitted). The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002). This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *Id.* At a termination hearing, the orphans' court may properly reject as untimely or disingenuous a parent's vow to follow through on necessary services when the parent failed to co-operate with the CYS agency or take advantage of available services during dependency proceedings. *Id.* at 340.

With respect to incarcerated parents, our Supreme Court has held that "incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing essential parental care, control, or subsistence." *In re Adoption of S.P.*, 47 A.3d 817, 830 (Pa. 2012) (citation and internal quotation marks omitted). Notably, "the length of the remaining confinement can be considered as highly relevant to whether the conditions and causes of the incapacity . . . cannot or will not be remedied by the parent, sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2)." *Id.* (internal quotation marks omitted).

Also relevant are the efforts the parent made to care for a child before the parent was incarcerated as an indication of the efforts the parent will make

when no longer incarcerated. *See In re Z.P.*, 994 A.2d 1108, 1126 (Pa. Super. 2010) (terminating parental rights of incarcerated father after examining his parenting history before incarceration and finding "Father's overall parenting history revealed no genuine capacity to undertake his parental responsibilities"). Another factor to consider is the parent's effort to maintain a relationship with a child while incarcerated*. In re E.A.P.*, 944 A.2d 79, 83 (Pa. Super. 2008). However, the orphans' court may place weight on other factors even when the parent is doing what he is supposed to do while incarcerated. *Id.* at 84. In other words, the orphans' court must consider "[t]he complete circumstances" of the case. *In re Z.P.*, 994 A.2d at 1125.

Father asserts that he did not abuse, neglect or refuse to provide essential care to Child, and that he could have a relationship with Child and meet her needs upon his release from prison. *Anders* Brief at 10. Father also argues that he made attempts to contact Child through Mother. *Id.*

The orphans' court addressed Section 2511(a)(2) as follows:

Here, we found that, except for a brief period between 2013 and 2014, Father had been incarcerated since the [C]hild's birth. He had never provided the [C]hild with essential parental care. While [Father] claimed that he tried to contact Mother to check in on the [C]hild, those efforts were few and far between. Furthermore, he never made any efforts to formally pursue custody or visitation. Moreover, Father still had approximately 18 months remaining on his maximum sentence. Even if Father would have been paroled the day of the termination hearing, it would have been many more months, if not years, until he would have been able to unite with the child. The [C]hild did not know [Father] was alive until recently. They had never met. Family and individual therapy would have been necessary before he could be a permanency resource for the [C]hild.[10] The [C]hild had been dependent for

- 8 -

nearly two years. She could not wait any longer for permanency. Accordingly, we concluded that the conditions and causes of his incapacity could not be remedied by Father in time to align with the child's needs. . . .

---

[10] The reunification efforts would be further complicated by Father's status as a lifetime Megan's Law offender.

Orphans' Court Opinion, 12/20/19, at 5-6 (footnote in the original).

Having reviewed the record, we conclude that it supports the findings of the orphans' court that Father has not provided the Child with the essential parental care, control and subsistence necessary for her mental and physical well-being, and that Father is unable to remedy the causes of his parental incapacity, neglect or refusal any time in the foreseeable future. Thus, Father is not entitled to relief.

**Termination Pursuant to Section 2511(b)**

We also conclude that, pursuant to Section 2511(b), the orphans' court properly determined that termination of Father's parental rights would be in the best interests of Child. With respect to Section 2511(b), we consider whether termination of parental rights will best serve Child's developmental, physical, and emotional needs and welfare. *See In re Z.P.*, 994 A.2d at 1121. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.* The orphans' court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster

parent. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). Ultimately, the concern is the needs and welfare of a child. *In re Z.P.*, *supra* at 1121.

Father argues the orphans' court erred in its analysis of Child's needs and welfare because Father loves Child and wants to prove that he can provide the care she needs. *Anders* Brief at 10-11. In terminating Father's parental rights, the orphans' court credited testimony that Father and Child had never met, and concluded that no bond existed between them. Orphans' Court Opinion, 12/20/19, at 5-6. Accordingly, the court concluded that terminating Father's parental rights would not negatively impact Child. *Id.* at 6. The court observed that the Child is thriving with her maternal grandparents, who provide the Child with love, stability, and permanency. *Id.* The court determined that it served the best interests of the Child to involuntarily terminate Father's parental rights. *Id.* at 6-7.

Our review of the record supports the orphans' court's findings. We do not discern an error of law or abuse of discretion with respect to the orphans' court's conclusion, and thus affirm the court's determination that involuntary termination of Father's parental rights is in the best interests of Child.

Furthermore, our independent review of the record, conducted in accordance with *Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa. Super. 2018), confirms counsel's assertion that there are no issues of merit to be considered by this Court and this appeal is, thus, wholly frivolous. Accordingly, we grant counsel's Application to Withdraw and affirm the Decree involuntarily terminating Father's parental rights.

Counsel's Application to Withdraw granted.  Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/21/2020